25CA2292 Peo in Interest of GAP 08-06-2026

COLORADO COURT OF APPEALS

Court of Appeals No. 25CA2292
El Paso County District Court No. 24JV30309
Honorable Jayne Candea-Ramsey, Magistrate
Honorable Diana May, Judge

The People of the State of Colorado,

Appellant,

In the Interest of G.A.P., a Child.

JUDGMENT AFFIRMED

Division V
Opinion by JUDGE YUN
Lipinsky and Schutz, JJ., concur

**NOT PUBLISHED PURSUANT TO C.A.R. 35(e)**
Announced August 6, 2026

Kenny Hodges, County Attorney, Melanie E. Gavisk, Senior County Attorney, Colorado Springs, Colorado, for Appellant

Josi McCauley, Counsel for Youth, Superior, Colorado, for G.A.P.

¶ 1 In this dependency and neglect action, the El Paso County Department of Human Services (the Department) appeals the juvenile court's order granting a petition filed by G.A.P. (the youth) for review of a magistrate's order closing the action. We affirm.

## I. Background

¶ 2 To provide context for this case, we begin by discussing the legal framework for the foster youth in transition program (FYiT) before describing the factual background.

### A. Overview of FYiT

¶ 3 FYiT — established in 2021 — is "a voluntary transitional foster care program, allowing youth to reenter the state's foster care system . . . and ensuring equitable access to less restrictive supports in the community." § 19-7-301(2), C.R.S. 2025. County departments of human services must "make the transition program available to eligible youth on a voluntary basis" and provide services that are "client-directed and developmentally appropriate, as set forth in a voluntary services agreement." This agreement may be overseen by the juvenile court in a youth in transition proceeding. § 19-7-303, C.R.S. 2025.

¶ 4     Youth between eighteen and twenty-one may be eligible for FYiT if the youth either (1) had certain prior "involvement" in foster care or (2) is a party to "a current dependency and neglect case." § 19-7-304(1)(a), (b), C.R.S. 2025.

¶ 5     If there is no open dependency and neglect case, a youth may request participation in FYiT from the department in the county where the youth resides.  The department then determines whether the youth is eligible to participate.  § 19-7-304(2), (3).

¶ 6     If there is an open dependency and neglect action, the Children's Code does not require a similar screening process. Instead, when the youth turns eighteen, the juvenile court must hold a "transition hearing" within thirty-five days of the youth's eighteenth birthday under section 19-3-705, C.R.S. 2025.  "The purpose of the transition hearing is to determine whether the youth will opt into [FYiT], established in section 19-7-303, or, alternatively, choose to emancipate."  § 19-3-705(1).

¶ 7     Before the hearing, the department must file a report that includes, among other statutory criteria, a description of the department's reasonable efforts toward achieving the youth's permanency goals; an affirmation that the department has provided

the youth with necessary records and documents; an affirmation that the department has informed the youth of the benefits and options available through FYiT; and a statement of whether the youth has made a preliminary decision about emancipation or participation in FYiT. § 19-3-705(2). "If it is anticipated" that a youth with an active dependency and neglect case "will choose to enter" FYiT, the department must also file a petition. § 19-3-705(2)(d)(II).

¶ 8 At the transition hearing, the juvenile court must specifically advise the youth of the options to emancipate or voluntarily enter FYiT. § 19-3-705(3)(a)-(e). If the youth elects to emancipate, the court must enter specific findings. § 19-3-705(4). If the youth opts into FYiT and a petition has been filed for a FYiT case, the court must dismiss the youth from the dependency and neglect action and open a youth in transition proceeding. § 19-3-705(6).

¶ 9 FYiT is "overseen by the juvenile court in a youth in transition proceeding" pursuant to article 7. §§ 19-7-303, 19-7-307, C.R.S. 2025. A youth in transition proceeding constitutes a "new case," independent of any prior dependency and neglect proceeding involving the youth. § 19-3-705(6).

B.     Factual Background

¶ 10     In 2024, the Department filed a petition in dependency and neglect, raising concerns about significant conflict between the youth and his father, as well as his mother's plan to move out of state and unwillingness to take the youth with her due to his behavioral issues.  The juvenile court continued the adjudication hearing under section 19-3-505(5), C.R.S. 2025, and adopted treatment plans for both parents consistent with  the terms of the deferred adjudications.[1]

¶ 11     Meanwhile, the youth turned eighteen years old.  Thirty days later, a juvenile court magistrate held a transition hearing, but the Department had not filed the required section 19-3-705(2) report.  At the transition hearing, the youth stated that he wanted to participate in FYiT and had executed a voluntary service agreement with the Department the previous day.  He also reported plans to move to New Mexico to live with his mother.  The Department

---

[1] Although the juvenile court did not review the deferred adjudications after six months, as required by section 19-3-505(5)(b), C.R.S. 2025, the terms of the deferred adjudications suggested that the case would be continued for an additional six months without further action from the court.

4

asserted that Colorado residency was required for participation in FYiT. Due to the thirty-five-day deadline imposed by section 19-3-705, the magistrate continued the transition hearing to the next day.

¶ 12   The following day, the Department reported that it had not filed the paperwork required for either emancipation or participation in FYiT and that it believed the youth would soon move to New Mexico. At the Department's request, the magistrate found that, "for [the youth] to participate [in FYiT], he needs to reside in the [S]tate of Colorado" so that the Department "has oversight" of the voluntary service agreement.

¶ 13   The magistrate provided general advisements to the youth regarding both FYiT and emancipation. The magistrate found that it could not hold an emancipation transition hearing because the Department had not filed the required emancipation discharge documents. Nevertheless, the magistrate found that "[the youth is] emancipating because this case will be closed," although the magistrate confirmed that "[the youth] did not want to emancipate." The magistrate did not make the section 19-3-705(4)(b) reasonable

efforts finding required for emancipation due to the lack of information provided by the Department.

¶ 14    The magistrate found that the youth had turned eighteen and, "based on the court denying [the youth's] request to be part of [FYiT], the Court f[ound] as a matter of law that [the youth had] been emancipated." The magistrate then closed the dependency and neglect action.

¶ 15    The youth petitioned for review of the magistrate's order. The juvenile court found that the youth met the eligibility criteria for FYiT at the time of the magistrate's order and determined that the magistrate erred by imposing an additional Colorado residency requirement. The juvenile court further found that the Children's Code "does not provide the court with jurisdiction to refuse to open a FYiT case simply because the youth had stated an intent to relocate."

¶ 16    The juvenile court then reopened the dependency and neglect case and ordered "that a FYiT process begin." Three months later, after a review hearing, the juvenile court again closed the dependency and neglect case.

¶ 17    Following the closure of the dependency and neglect case, the juvenile court accepted a petition by the youth to initiate a youth in transition proceeding and continues to oversee this proceeding.  *See People v. Sa'ra,* 117 P.3d 51, 56 (Colo. App. 2004) (appellate court may take judicial notice of the contents of court records in a related case).

## II.    Analysis

¶ 18    The Department raises two arguments: first, that the juvenile court lacked authority to hold a hearing in the dependency and neglect action after granting the youth's petition for review of the magistrate's order; and second, that the juvenile court erred by reversing the magistrate's determination that the youth was ineligible to participate in FYiT.  We address each contention in turn.

### A.    Reopening the Dependency and Neglect Action

¶ 19    The Department first contends that the juvenile court erred by holding a hearing in the dependency and neglect action after granting the youth's petition for review.  According to section 19-3-505(5)(b), after two six-month continuations of the

adjudicatory hearing, the petition in dependency and neglect must "either be dismissed or sustained." We discern no reversible error.

¶ 20    When the juvenile court granted the petition for review of the magistrate's ruling, it reopened the dependency and neglect action and set a review hearing for seven months after the youth turned eighteen. At that hearing, the Department moved to dismiss, noting that the twelve-month period for the deferred adjudications for both parents had expired. The court then closed the dependency and neglect action.

¶ 21    The Department asserts that it was error for the juvenile court to hold a hearing on any issue other than whether to dismiss or grant the petition in dependency and neglect because the twelve-month continuance permitted by section 19-3-505(5) had expired. *See People in Interest of A.W.*, 74 P.3d 497, 400 (Colo. App. 2003). Additionally, because the youth was eighteen years old, the juvenile court was required to dismiss the youth from the dependency action unless it (1) made findings that the emancipation hearing was being continued "for any . . . reason necessary to allow the youth a successful transition to adulthood" or (2) was considering a determination that the youth was an incapacitated person.

§§ 19-3-205, 19-3-704, 19-3-705(5), (6), C.R.S. 2025. Neither of those alternatives occurred here.

¶ 22    In any event, we discern no error because the juvenile court used the hearing to close the dependency and neglect action.

¶ 23    To the extent the Department contends that the juvenile court erred by reopening the dependency and neglect action as part of its order granting the petition for review, any such error was harmless because the juvenile court promptly closed the case again at its first opportunity. *See* C.R.C.P. 61 (noting that an appellate court may disregard any error "which does not affect the substantial rights of the parties").

### B.    The Juvenile Court's Eligibility Findings

¶ 24    The Department next contends that the juvenile court erred by granting the youth's petition for review of the magistrate's order. Because section 19-3-705 does not authorize a dependency and neglect court to determine a youth's eligibility for FYiT, we discern no error.

¶ 25    The juvenile court found that the Children's Code "clearly identifies and limits the [dependency and neglect] court's jurisdiction. It does not provide the court with jurisdiction to refuse

9

to open a FYiT." We understand the juvenile court's broad use of "jurisdiction" to mean the court's authority to take a particular action, not its subject matter or personal jurisdiction. *See People in Interest of J.W. v. C.O.*, 2017 CO 105, ¶ 21 (A court's "jurisdiction" has been described as its "power to entertain and to render a judgment on a particular claim," its "authority to hear and determine a matter," or its "power to decide."). In addition to the limits of personal and subject matter jurisdiction, a court's authority to take a particular action within a case may be constrained by statute, rule, or case law. *People in Interest of T.W.*, 2022 COA 88M, ¶ 34.

¶ 26 Indeed, the Children's Code limits the dependency and neglect court's authority to act once a youth turns eighteen years old. Under the Children's Code, the court is required to hold a transition hearing "to determine whether the youth will opt into the foster youth in transition program . . . or, alternatively, choose to emancipate." § 19-3-705(1). To ensure an informed decision, the court must advise the youth of the "right to choose whether to emancipate or to voluntarily" enter FYiT, as well as the obligations and options related to that choice. § 19-3-705(3)(a)-(e). If the youth

opts into FYiT and a petition for a youth in transition case is filed, "the court shall dismiss the case" under article 3 "and open a new case brought pursuant to part 3 of article 7 of this title 19." § 19-3-705(6).

¶ 27 Importantly, no part of section 19-3-705 authorizes the dependency and neglect court to decide the youth's eligibility for FYiT. We therefore discern no error in the juvenile court's order reversing the magistrate's eligibility determination.

¶ 28 The Department also asks us to determine whether the youth was eligible for FYiT when his intention was to move out of state. We decline to do so because our review is confined to the dependency and neglect case. *See* § 19-7-303 (The "FYiT process," including a review of venue, the initial petition, and ongoing eligibility, is "overseen by the juvenile court in a youth in transition proceeding brought pursuant to this part 3" of article 7 — not the article 3 dependency court).

### III.   Disposition

¶ 29 The judgment is affirmed.

JUDGE LIPINSKY and JUDGE SCHUTZ concur.

11